FILED
2009 Aug-14 AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

SEP 1 7 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE AMSTED INDUSTRIES, INC. "ERISA" LITIGATION | Case No. 01 C 2963<br>MDL No. 1417<br>Judge James B. Moran |
| THIS DOCUMENT RELATES TO: | **DOCKETED**<br>SEP 2 0 2002 |

IN RE AMSTED INDUSTRIES, INC. ) Case No. 01 C 2963
"ERISA" LITIGATION ) MDL No. 1417
) Judge James B. Moran
THIS DOCUMENT RELATES TO: )
)
)
)
JUAN ARMSTRONG, JAMES E. DUCKETT, ) **Case Numbers:**
RODERICK GILLESPIE, LARRY HOLDER, ) *Armstrong v. AMSTED Indus., et al.,*
JACK D. LECROY, DARWYN LIGHTSEY, ) *CV-01-BU-2081-S (N.D. Ala.);*
MICHAEL G. MARCHANT, JOE LEE ) *Duckett v. AMSTED Indus., et al.,*
MASON, JR. CHARLES MCQUEEN, NOEL ) *CV-01-J-2118-S (N.D. Ala.);*
G. SANDERS, III, DWIGHT SMITH, JOHN E. ) *Gillespie v. AMSTED Indus., et al.,*
SMITH, GERARD WALKER, DANIEL L. ) *CV-01-S-2083-S (N.D. Ala.);*
WHEELER, and MIGUEL ZEPEDA, JR., ) *Holder v. AMSTED Indus., et al.,*
individually, in their capacity as plan ) *CV-01-BU-2120-S (N.D. Ala.);*
participants and beneficiaries on behalf of ) *LeCroy v. AMSTED Indus., et al.,*
AMSTED Industries, Inc. Employee Stock ) *CV-01-HGD-2025-S (N.D. Ala.);*
Ownership Plan as a whole, and on behalf of all ) *Lightsey v. AMSTED Indus., et al.,*
others similarly situated, ) *CV-01-N-2119-S (N.D. Ala.);*
) *Marchant v. AMSTED Indus., et al.,*
) *CV-01-N-1962-S (N.D. Ala.);*
Plaintiffs, ) *Mason v. AMSTED Indus., et al.,*
) *CV-01-S-2082-S (N.D. Ala.);*
) *McQueen v. AMSTED Indus., et al.,*
vs. ) *CV-01-JEO-2042-S (N.D. Ala.);*
) *Sanders v. AMSTED Indus., et al.,*
) *CV-01-B-2117-S (N.D. Ala.);*
AMSTED INDUSTRIES, INC., AMSTED ) *Smith, D. v. AMSTED Indus., et al.,*
INDUSTRIES, INC. EMPLOYEES' STOCK ) *CV-01-B-2124-S (N.D. Ala.);*
OWNERSHIP PLAN (ESOP), and ) *Smith, J. v. AMSTED Indus., et al.,*
ARTHUR W. GOETSCHEL, RAYMOND A. ) *CV-01-B-2122-S (N.D. Ala.);*
JEAN, DAVID B. WHITEHURST, LEWIS ) *Walker v. AMSTED Indus., et al.,*
COLLENS, JOHN M. DIXON, JOHN E. ) *CV-01-B-2123-S (N.D. Ala.);*
JONES, W. ROBERT REUM, RICHARD E. ) *Wheeler v. AMSTED Indus., et al.,*
TERRY, GORDON R. LOHMAN, THOMAS C. ) *CV-01-JEO-2121-S (N.D. Ala.).*
BERG, JOSEPH W. NEWMAN, PAUL F. ) (Consolidated in MDL 1417)
FISCHER, O. J. SOPRANOS, BYRON D. )
SPEICE, ROBERT A. CIAPPETTA, and )
MATTHEW J. HOWER, individually and )
in their capacities as directors, officers and )
agents of AMSTED Industries, Inc., and )
fiduciaries of the AMSTED Industries, Inc., )

92

Employee Stock Ownership Plan, and )
**LASALLE BANK NATIONAL** )
**ASSOCIATION,** )
)
Defendants. )
)

## NOTICE OF FILING

To: PLEASE SEE ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on September 17, 2002, Class Counsel filed with this Court **NON-RETIREES FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** in the above captioned matter, a copy of which is attached hereto and herewith served upon the parties on the attached service list.

One of the Attorneys for Plaintiffs

Thomas A. Kelliher
Gary D. McCallister
Gary D. McCallister & Associates, Ltd.
29 South LaSalle
Suite 1210
Chicago, Illinois 60603
(312) 345-0611
fax: (312) 345-0612

# SERVICE LIST

Mark D. DeBofsky, Esq.
Nathan Q. Rugg, Esq.
DeBOFSKY & DEBOFSKY
77 West Washington Street, Suite 500
Chicago, IL 60602
fax: (312) 372-0117

Richard H. Schnadig, Esq.
Charis Runnels, Esq.
VEDDER, PRICE, KAUFMAN & KAMMHOLZ
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601-1003
fax: (312) 609-5005

Ed Gentle, Esq.
Temple D. Trueblood, Esq.
GENTLE, PICKENS, ELIASON & TURNER
Two North 20th Street, Suite 1200
Birmingham, AL 35203
fax: (205) 716-2364

LaSalle Bank
135 South LaSalle Street
19th Floor
Chicago, IL 60603

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**F I L E D**

SEP 1 7 2002

Judge James B. Moran
United States District Court

|  |  |
|---|---|
| IN RE AMSTED INDUSTRIES, INC. "ERISA" LITIGATION | Case No. 01 C 2963 |
|  | MDL No. 1417 |
| THIS DOCUMENT RELATES TO: | Judge James B. Moran |

**DOCKETED**

SEP 2 0 2002

JUAN ARMSTRONG, JAMES E. DUCKETT,
RODERICK GILLESPIE, LARRY HOLDER,
JACK D. LECROY, DARWYN LIGHTSEY,
MICHAEL G. MARCHANT, JOE LEE
MASON, JR. CHARLES MCQUEEN, NOEL
G. SANDERS, III, DWIGHT SMITH, JOHN E.
SMITH, GERARD WALKER, DANIEL L.
WHEELER, and MIGUEL ZEPEDA, JR.,
individually, in their capacity as plan
participants and beneficiaries on behalf of
AMSTED Industries, Inc. Employee Stock
Ownership Plan as a whole, and on behalf of all
others similarly situated,

           **Plaintiffs,**

**vs.**

AMSTED INDUSTRIES, INC., AMSTED
INDUSTRIES, INC. EMPLOYEES' STOCK
OWNERSHIP PLAN (ESOP), and
ARTHUR W. GOETSCHEL, RAYMOND A.
JEAN, DAVID B. WHITEHURST, LEWIS
COLLENS, JOHN M. DIXON, JOHN E.
JONES, W. ROBERT REUM, RICHARD E.
TERRY, GORDON R. LOHMAN, THOMAS C.
BERG, JOSEPH W. NEWMAN, PAUL F.
FISCHER, O. J. SOPRANOS, BYRON D.
SPEICE, ROBERT A. CIAPPETTA, and
MATTHEW J. HOWER, individually and
in their capacities as directors, officers and
agents of AMSTED Industries, Inc., and
fiduciaries of the AMSTED Industries, Inc.,
Employee Stock Ownership Plan, and

**Case Numbers:**

*Armstrong v. AMSTED Indus., et al.,*
CV-01-BU-2081-S (N.D. Ala.);
*Duckett v. AMSTED Indus., et al.,*
CV-01-J-2118-S (N.D. Ala.);
*Gillespie v. AMSTED Indus., et al.,*
CV-01-S-2083-S (N.D. Ala.);
*Holder v. AMSTED Indus., et al.,*
CV-01-BU-2120-S (N.D. Ala.);
*LeCroy v. AMSTED Indus., et al.,*
CV-01-HGD-2025-S (N.D. Ala.);
*Lightsey v. AMSTED Indus., et al.,*
CV-01-N-2119-S (N.D. Ala.);
*Marchant v. AMSTED Indus., et al.,*
CV-01-N-1962-S (N.D. Ala.);
*Mason v. AMSTED Indus., et al.,*
CV-01-S-2082-S (N.D. Ala.);
*McQueen v. AMSTED Indus., et al.,*
CV-01-JEO-2042-S (N.D. Ala.);
*Sanders v. AMSTED Indus., et al.,*
CV-01-B-2117-S (N.D. Ala.);
*Smith, D. v. AMSTED Indus., et al.,*
CV-01-B-2124-S (N.D. Ala.);
*Smith, J. v. AMSTED Indus., et al.,*
CV-01-B-2122-S (N.D. Ala.);
*Walker v. AMSTED Indus., et al.,*
CV-01-B-2123-S (N.D. Ala.);
*Wheeler v. AMSTED Indus., et al.,*
CV-01-JEO-2121-S (N.D. Ala.).
(Consolidated in MDL 1417)

92

LASALLE BANK NATIONAL
ASSOCIATION,                         )
                                     )
                                     )
            Defendants.              )
                                     )
_____ )

**FILED**

SEP 1 7 2002

Judge James B. Moran
United States District Court

## NON-RETIREES FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

COME NOW Plaintiffs, Juan Armstrong, James E. Duckett, Roderick Gillespie, Larry Holder, Jack D. LeCroy, Darwyn Lightsey, Michael G. Marchant, Joe Lee Mason, Jr., Charles McQueen, Noel G. Sanders, III, Dwight Smith, John E. Smith, Gerard Walker and Daniel L. Wheeler (collectively referred to as the "Alabama Plaintiffs"), and Miguel Zepeda, Jr., (Alabama Plaintiffs and Zepeda are collectively referred to as the "Plaintiffs"), by and through their undersigned counsel, and show unto this Honorable Court the following:

## I. NATURE OF ACTION

1.      This action is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29. U.S.C. §1001 et seq., and the principles of federal common law thereunder, to compel reinstatement of benefits, equitable remedies under ERISA, various remedies for breach of fiduciary duties, reimbursement and repayment of all losses sustained on behalf of the AMSTED Employees' Stock Ownership Plan and certain participants and/or beneficiaries thereunder ("AMSTED ESOP Participant" or "Plan Participant"). Plaintiffs' rights and benefits arise from duties and written promises of the Defendants that include, without limitation, integral parts of Plaintiffs' employment contracts with AMSTED Industries, Inc. ("AMSTED"), and the AMSTED Industries, Inc. Employees' Stock Ownership Plan as Amended and Restated Effective October 1, 1995 ("Plan" or "ESOP"), issued by Defendant AMSTED, a copy of which was previously attached to several of the Plaintiffs' original Complaints. This action asserts substantial and related

-2-

claims of violations of ERISA, breaches of fiduciary duties, breach of contract and conversion as a result of the individual and collective acts of the Defendants, and oral statements of AMSTED, its officers, directors, employees and agents.

## II. JURISDICTION AND VENUE

2.       Jurisdiction of this Court is invoked under and conferred by (a) the existence of a controversy arising under ERISA (29 U.S.C. §1132); and (b) the existence of a controversy arising under the laws of the United States (28 U.S.C. §1331).

3.       Defendant AMSTED, is, and was during the duration of the events set out herein, doing business within this judicial district.

4.       Many of the acts charged herein, including the violations of ERISA, occurred in this judicial district. Those acts which did not actually occur in this district did result in and cause harm to occur in this district. In addition, the Judicial Panel on Multidistrict Litigation determined that this district was appropriate for coordination or consolidation of pretrial discovery matters.

5.       Venue is this judicial district is proper pursuant to 29 U.S.C. §1132 and 28 U.S.C. §1391 (b) and (c).

## III. THE PARTIES

6.       Plaintiff, JUAN ARMSTRONG, is forty-five (45) years of age and is a resident of Jefferson County of the State of Alabama. Mr. Armstrong is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with nineteen (19) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Armstrong is a participant in and a beneficiary of the AMSTED ESOP, and has been a participant for five (5) years. He was employed as a Recorder. Armstrong filed a grievance with the Administrator of AMSTED's ESOP. Armstrong's claim was wholly denied. Since his termination, Armstrong has received no severance,

-3-

no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

7.      Plaintiff, JAMES E. DUCKETT, is fifty-eight (58) years of age and is a resident of Jefferson County of the State of Alabama. Mr. Duckett is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with over twelve (12) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Duckett is a participant in and a beneficiary of the AMSTED ESOP. In January 1997, Mr. Duckett took a non-bargaining position with AMSTED and was immediately eligible for and fully vested in the AMSTED ESOP. He was employed as a Recorder. Mr. Duckett filed a grievance with the Administrator of AMSTED's ESOP. Mr. Duckett's claim was wholly denied. Since his termination, Mr. Duckett has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

8.      Plaintiff, RODERICK GILLESPIE, is forty (40) years of age and is a resident of Jefferson County of the State of Alabama. Mr. Gillespie is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with over five (5) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Gillespie is a participant in and a beneficiary of the AMSTED ESOP and was vested in 1998. He was employed as a Magmaglo Inspector. Mr. Gillespie filed a grievance with the Administrator of AMSTED's ESOP. Mr. Gillespie's claim was wholly denied. Since his termination, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

9.      Plaintiff, LARRY HOLDER, is fifty-five (55) years of age and is a resident of Jefferson County of the State of Alabama. Mr. Holder is an employee of the Griffin Wheel

Company, an operational division of AMSTED, with over thirty-one (31) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Holder is a participant in and a beneficiary of the AMSTED ESOP. He took a non-bargaining position with the Company in 1979, and was automatically eligible and fully vested in the AMSTED ESOP at the time it was created in 1986. He was employed as an Inspection and Finishing Supervisor. Mr. Holder filed a grievance with the Administrator of AMSTED's ESOP. Mr. Holder's claim was wholly denied. Since the Bessemer, Alabama, plant closed, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

10.     Plaintiff, JACK D. LECROY, is sixty (60) years of age and is a resident of Jefferson County of the State of Alabama. Mr. LeCroy is an employee of the Griffin Wheel Company, an operational division of AMSTED, with thirty-one (31) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. LeCroy began working for Griffin Wheel Company in 1969 as a bargaining unit employee, and took a non-bargaining position witht the Company in 1990. Mr. LeCroy was immediately eligible and fully vested in the AMSTED ESOP. He is a participant in and a beneficiary of the AMSTED ESOP. He was employed as a Maintenance Foreman. Mr. LeCroy filed a grievance with the Administrator of the AMSTED ESOP. Mr. LeCroy's claim was wholly denied. He has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP. Mr. LeCroy continues to work for the Company to assist with disassembly of the plant in Bessemer Alabama

11.     Plaintiff, DARWYN LIGHTSEY, is forty (40) years of age and is a resident of Jefferson County of the State of Alabama. Mr. Lightsey is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with over ten (10) years of service at the Bessemer,

Alabama, plant of Griffin Wheel Company. Mr. Lightsey began working for Griffin Wheel Company in April of 1990 as a bargaining unit employee. Mr. Lightsey is a participant in and a beneficiary of the AMSTED ESOP. Around July 1992, he took a non-bargaining position with the Company and was immediately eligible for and vested in the AMSTED ESOP. He was employed as an Inspector. Mr. Lightsey filed a grievance with the Administrator of AMSTED's ESOP. Mr. Lightsey's claim was wholly denied. Since his termination, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

12. Plaintiff, MICHAEL G. MARCHANT, is forty (40) years of age and is a resident of Bibb County of the State of Alabama. Mr. Marchant is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with thirteen (13) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Marchant is a participant in and a beneficiary of the AMSTED ESOP. Mr. Marchant began working for Griffin Wheel Company in August of 1988 as a bargaining unit employee. In November of 1997, he took a non-bargaining position with the Company and was immediately eligible for and fully vested in the AMSTED ESOP. Mr. Marchant was employed as a Maintenance Inspector. Mr. Marchant filed two separate grievances with the Administrator of the AMSTED ESOP. His claims were wholly denied. Since his termination, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

13. Plaintiff, JOE LEE MASON, JR., is thirty-four (34) years of age and is a resident of Jefferson County of the State of Alabama. Mr. Mason is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with twelve (12) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Mason is a participant in and a beneficiary of the

AMSTED ESOP. Mr. Mason has been a Plan Participant for seven (7) years. He is fully vested. He was employed as a Moulding Room Foreman. Mr. Mason filed a grievance with the Administrator of the AMSTED ESOP. His claims were wholly denied. Since his termination, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

14.    Plaintiff, CHARLES MCQUEEN, is forty-nine (49) years of age and is a resident of Jefferson County of the State of Alabama. Mr. McQueen is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with thirteen (13) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. McQueen is a participant in and a beneficiary of the AMSTED ESOP. He began working as a bargaining unit employee in October of 1986. Around September of 1996 he took a non-bargaining position with the Company and was immediately eligible and filly vested in the AMSTED ESOP. Mr. McQueen was employed as Melting Foreman. Mr. McQueen filed two separate grievances with the Administrator of the AMSTED ESOP. His claims were wholly denied. Since his termination, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

15.    Plaintiff, NOEL G. ("TRIP") SANDERS, III, is thirty-eight (38) years of age and is a resident of Jefferson County of the State of Alabama. Mr. Sanders is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with over twenty (20) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Sanders is a participant in and a beneficiary of the AMSTED ESOP. Mr. Sanders began working for Griffin Wheel Company in April 1981 in a non-bargaining position. After a brief layoff, he returned to work in October of 1982. Mr. Sanders was automatically eligible and fully vested in the AMSTED ESOP at the time it

-7-

was created in 1986. He was employed as a Scheduled Maintenance Foreman. Mr. Sanders filed a grievance with the Administrator of the AMSTED ESOP. His claims were wholly denied. Since his termination, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

16. Plaintiff, DWIGHT SMITH, is forty-two (42) years of age and is a resident of Shelby County of the State of Alabama. Mr. Smith is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with over four (4) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Smith is a participant in and a beneficiary of the AMSTED ESOP. He was employed as a Magmaglo Inspector. Mr. Smith filed a grievance with the Administrator of the AMSTED ESOP. His claims were wholly denied. Since his termination, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

17. Plaintiff, JOHN E. SMITH, is thirty-six (36) years of age and is a resident of Jefferson County of the State of Alabama. Mr. Smith is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with over eight (8) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Smith is a participant in and a beneficiary of the AMSTED ESOP. He began working for Griffin Wheel Company in June 1992 in a non-bargaining position and was immediately eligible for the AMSTED ESOP. He became vested in 1995. Mr. Smith was employed as a Maintenance Foreman. Mr. Smith filed a grievance with the Administrator of the AMSTED ESOP. His claims were wholly denied. Since his termination, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

18. Plaintiff, GERARD WALKER, is forty-three (43) years of age and is a resident of

-8-

Jefferson County of the State of Alabama. Mr. Walker is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with over five (5) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Walker is a participant in and a beneficiary of the AMSTED ESOP. He was employed as an Inspection Finishing Foreman. Mr. Walker filed a grievance with the Administrator of the AMSTED ESOP. His claims were wholly denied. Since his termination, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

19. Plaintiff, DANIEL L. WHEELER, is forty-four (44) years of age and is a resident of Jefferson County of the State of Alabama. Mr. Wheeler is a former employee of the Griffin Wheel Company, an operational division of AMSTED, with over twenty-three (23) years of service at the Bessemer, Alabama, plant of Griffin Wheel Company. Mr. Wheeler is a participant in and a beneficiary of the AMSTED ESOP. Mr. Wheeler began working at Griffin Wheel Company in October of 1978 as a bargaining unit employee. In June of 1984, he took a non–bargaining position with the Company. He became eligible for the AMSTED ESOP when it was created in 1986, and became vested in 1989. He was employed as a Store Supervisor. Mr. Wheeler filed a grievance with the Administrator of the AMSTED ESOP. His claims were wholly denied. Since his termination, he has received no severance, no information regarding the Company's stock repurchase obligation or even any general information related to the AMSTED ESOP.

20. Plaintiff, MIGUEL ZEPEDA, JR, is twenty-nine (29) years of age and is a resident of Kane County of the State of Illinois. Mr. Zepeda is an employee of the Burgess-Norton plant in Geneva, Illinois, a division of AMSTED. Mr. Zepeda is a participant in and a beneficiary of the AMSTED ESOP. Mr. Zepeda began working at Burgess-Norton on April 14, 1992 as a non-bargaining unit employee. He is vested in the AMSTED ESOP. Mr. Zepeda is employed as a

-9-

maintenance person and driver. Mr. Zepeda inquired about his right to file a claim for benefits, but was discouraged by AMSTED personnel from filing a claim. AMSTED personnel informed Mr. Zepeda that he had no recourse against the Company because he was a non-bargaining unit employee. AMSTED wrongfully interfered with his access to the claims procedure in an attempt to prevent his claims. Nevertheless, Mr. Zepeda recently filed a grievance with the Administrator of the AMSTED ESOP requesting reinstatement of his benefits. His claims are currently pending.

21. Defendant AMSTED, is a privately held, Subchapter-S corporation organized under the laws of Delaware with its principal place of business located in Chicago, Illinois. AMSTED, at all times pertinent to the actions giving rise to this suit, was actively doing business across the country through various plants and operating divisions. Defendant AMSTED ESOP is the Employees' Stock Ownership Plan that owns Defendant AMSTED.

22. Defendant ARTHUR W. GOETSCHEL ("Mr. Goetschel" or "Goetschel"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Goetschel served as the Chairman, President, Chief Executive Officer and a Director of AMSTED, as well as a member of the ESOP Committee. Mr. Goetschel resigned from AMSTED in all of the above-listed capacities as of March 16, 2001.

23. Defendant RAYMOND A. JEAN ("Mr. Jean" or "Jean"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Jean served as a Corporate Vice President and Director of AMSTED as of August 1999, and also served as a member of the ESOP Committee. Mr. Jean was elected a Director of AMSTED in March 2000. Prior to August 1999, Mr. Jean served as President and Chief Executive Officer of Varlen Corporation ("Varlen").

24.     Defendant DAVID B. WHITEHURST ("Mr. Whitehurst" or "Whitehurst"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Whitehurst served as a Corporate Vice President and Director of AMSTED and as a member of the ESOP Committee.

25.     Defendant LEWIS COLLENS ("Mr. Collens" or "Collens"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Collens served as a Director of AMSTED.

26.     Defendant JOHN M. DIXON ("Mr. Dixon" or "Dixon"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Dixon served as a Director of AMSTED.

27.     Defendant JOHN E. JONES ("Mr. Jones" or "Jones"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Jones served as a Director of AMSTED and as the Chairman of the ESOP Committee.

28.     Defendant W. ROBERT REUM ("Mr. Reum" or "Reum"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Reum served as a Director of AMSTED and as a member of the ESOP Committee. Effective March 16, 2001, Mr. Reum assumed the positions of Chairman of the Board, President and Chief Executive Officer of AMSTED.

29.     Defendant RICHARD E. TERRY ("Mr. Terry" or "Terry"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois.

-11-

At times pertinent to the actions which are the basis of this cause, Mr. Terry served as a Director of AMSTED and as a member of the ESOP Committee.

30.     Defendant GORDON R. LOHMAN ("Mr. Lohman" or "Lohman"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Lohman served as a Director of AMSTED.

31.     Defendant THOMAS C. BERG ("Mr. Berg" or "Berg"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois.  At times pertinent to the actions which are the basis of this cause, Mr. Berg served as the General Counsel, Secretary and as a Vice President of AMSTED.

32.     Defendant JOSEPH W. NEWMAN ("Mr. Newman" or "Newman"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At all times pertinent to the actions which are the basis of this cause, Mr. Newman served as the Controller of AMSTED, up and until April 2000.

33.     Defendant PAUL F. FISCHER ("Mr. Fischer" or "Fischer"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Fischer served as the Controller of AMSTED, up and until April 2000.

34.     Defendant O. J. SOPRANOS ("Mr. Sopranos" or "Sopranos"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Sopranos served as a Corporate Vice President of AMSTED.

35.     Defendant BYRON D. SPEICE ("Mr. Speice" or "Speice"), is over the age of

-12-

nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Newman served as a Corporate Vice President of AMSTED.

36.   Defendant ROBERT A. CHIAPPETTA ("Mr. Chiappetta" or "Chiappetta"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Chiappetta served as the Chief Financial Officer and as a Vice President of AMSTED.

37.   Defendant MATTHEW J. HOWER ("Mr. Hower" or "Hower"), is over the age of nineteen years and is either a resident of or doing business in Cook County of the State of Illinois. At times pertinent to the actions which are the basis of this cause, Mr. Hower served concurrently as both the Treasurer of AMSTED and as the Plan Administrator of the ESOP.

38.   Defendant LASALLE BANK NATIONAL ASSOCIATION ("LaSalle Bank") is a commercial bank doing business throughout the Midwest with its principal place of business located in Chicago, Illinois. LaSalle Bank is the institutional trustee of AMSTED ESOP.

## III.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Procedural History

39.   Previous to the filing of this consolidated class complaint, Alabama Plaintiffs individually filed the following substantially similar complaints: (i) *Michael G. Marchant v. AMSTED Industries, Inc., et al.,* Civil Action No. 01-N-1962-W, in the Northern District of Alabama, Western Division; (ii) *Jack D. LeCroy v. AMSTED Industries, Inc., et al.,* Civil Action No. 01-HGD-2025-S, in the Northern District of Alabama, Southern Division; (iii) *Charles McQueen v. AMSTED Industries, Inc., et al.,* Civil Action No. 01-JEO-2042-S, in the Northern District of Alabama, Southern Division; (iv) *Juan Armstrong v. AMSTED Industries, Inc., et al.,* Civil Action

No. 01-BU-2081-S, in the Northern District of Alabama, Southern Division; (v) *Joe Lee Mason, Jr.*

*v. AMSTED Industries, Inc., et al.,* Civil Action No. 01-S-2082-S, in the Northern District of

Alabama, Southern Division; (vi) *Roderick Gillespie v. AMSTED Industries, Inc., et al.,* Civil Action

No. 01-S-2083-S, in the Northern District of Alabama, Southern Division; (vii) *James E. Duckett v.*

*AMSTED Industries, Inc., et al.,* Civil Action No. 01-J-2118-S, in the Northern District of Alabama,

Southern Division; (viii) *Larry Holder v. AMSTED Industries, Inc., et al.,* Civil Action No. 01-BU-

2120-S, in the Northern District of Alabama, Southern Division; (ix) *Darwyn Lightsey v. AMSTED*

*Industries, Inc., et al.,* Civil Action No. 01-N-2119-S, in the Northern District of Alabama, Southern

Division; (x) *Noel G. Sanders, III v. AMSTED Industries, Inc., et al.,* Civil Action No. 01-B-2117-S,

in the Northern District of Alabama, Southern Division; (xi) *Dwight Smith v. AMSTED Industries,*

*Inc., et al.,* Civil Action No. 01-B-2124-S, in the Northern District of Alabama, Southern Division;

(xii) *John E. Smith v. AMSTED Industries, Inc., et al.,* Civil Action No. 01-B-2122-S, in the

Northern District of Alabama, Southern Division; (xiii) *Gerard Walker v. AMSTED Industries, Inc.,*

*et al.,* Civil Action No. 01-N-2123-S, in the Northern District of Alabama, Southern Division; (xiv)

*Daniel L. Wheeler v. AMSTED Industries, Inc., et al.,* Civil Action No. 01-JEO-2121-S, in the

Northern District of Alabama, Southern Division.

40.     On September 13, 2001, the Judicial Panel on Multidistrict litigation ("JPML") issued

CTO-1 transferring the above-listed cases to the Northern District of Illinois for consolidated pretrial

proceedings (In re AMSTED Industries, Inc. "ERISA" Litigation, Case No. MDL-1417) before the

Honorable James B. Moran.

41.     On October 4, 2001, based on the parties' representation that the claims filed by all of

the plaintiffs involved in this MDL broke down generally into two groupings, the Court ordered

Alabama Plaintiffs to file an amended, consolidated complaint on behalf of non-retirees, which

Alabama Plaintiffs and Plaintiff Miguel Zepeda, Jr., do by this Complaint.

### B.  AMSTED and The AMSTED Employee Stock Ownership Plan

42.  AMSTED Industries Incorporated has been a Chicago company for almost one hundred years.  AMSTED began as American Steel Foundries and soon integrated additional manufacturing companies acquired through the years necessitating the formation of a corporate oversight organization in 1962 with the formation of AMSTED Industries Incorporated.  AMSTED prospered over the years with annual sales reaching nearly one billion dollars.  Until the mid-1980's, AMSTED was publicly traded on the New York Stock Exchange.  During these years, AMSTED was conservatively managed, profitable and slowly developed a cash surplus in addition to having over-funded hourly and salaried pension funds.

43.  In 1985, when AMSTED was still a publicly-held company, an investor began to accumulate AMSTED stock with the purpose of acquiring the company through a hostile takeover. AMSTED management, in an effort to avoid such a buy-out, made the decision to take the company private through a leveraged ESOP buyout.

44.  On March 6, 1986, AMSTED became a privately-held company through an Employees' Stock Ownership Plan ( "Plan" or "ESOP").  The resulting ESOP is a benefit plan that makes AMSTED a majority employee owned company.  The AMSTED ESOP is a federally qualified employee benefit program subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., and the principles of federal common law thereunder, in

---

John M. R. Schilling, the plaintiff in transferred case, *Shilling v. Amsted Indus., et al.*, No. 3:01-CV-538-J-12HTS (M.D. Fla.), is a non-retiree, but has informed Plaintiffs through counsel that he intends to seek the Court's approval to proceed alone under a separate complaint.

addition to principles of common law trusts. To take full advantage of all governmental regulations favorable to ESOPs, the company applied for and was granted Subchapter-S corporate status by adjusting to a 100% employee-owned company in 1996.

45. The participating employees under the AMSTED ESOP are all United States salaried and non-bargaining unit employees. At the end of each fiscal year, the AMSTED ESOP distributes shares of stock to the participants' individual ESOP retirement accounts. The ESOP allocates shares of stock to participants with a value equal to a percentage of their annual compensation. The participants' account values change not only with new share allocations each year, but also with the company's stock price fluctuations.

46. During the mid to late 1990's, AMSTED again developed a cash surplus as it had in those years of business prior to the conversion to an ESOP structure. At this time, AMSTED began to become more aggressive in the acquisition arena, resulting in the acquisition and merger of several smaller companies into AMSTED.

### C. Varlen Purchase and AMSTED's Repurchase Obligations

47. In early 1999, Defendant Goetschel became the President and Chief Executive Officer of AMSTED. Also, in early 1999, an acquisition candidate was identified for integration into the transportation supply division of AMSTED and negotiations were commenced. However, one of AMSTED's local competitors, Varlen Corporation ("Varlen"), was also interested in acquiring the target company. To AMSTED's disappointment, its rival, Varlen, eventually succeeded in acquiring that company. Following this occurrence, AMSTED management identified Varlen not only as a competitor, but also as a new acquisition candidate. In May of 1999, only a few weeks after Defendant Goetschel had assumed his positions as the President and Chief Executive Officer of AMSTED, the company initiated a hostile takeover of Varlen. AMSTED eventually

-16-

succeeded in acquiring Varlen, but AMSTED used ESOP assets to purchase Varlen stock at an exaggerated share price and with AMSTED assuming the accumulated debt of Varlen, estimated at $250 million. The acquisition transaction was completed in August 1999, with AMSTED paying almost a 60% stock price premium for outstanding shares at approximately $600 million, in addition to assuming the voluminous consolidated debt of Varlen.

48.    The AMSTED ESOP paid almost twice the all time high for its shares of Varlen. Upon information and belief, even though ESOP assets were used in the purchase, no independent evaluation or appraisal was done either by the Trustee, LaSalle Bank, or by AMSTED for the benefit of the ESOP. In the alternative no adequate independent evaluation was done to evaluate or adequately evaluate the impact of the Varlen merger and related transactions on the ESOP. On information and belief, the share price paid by AMSTED and its ESOP in connection with the purchase of Varlen was in excess of adequate consideration. Further, on information and belief the costly acquisition of Varlen was fueled by the private agenda of AMSTED's management, specifically Defendant Goetschel, instead of out of any concern for AMSTED's corporate well-being or the interests of the ESOP Participants. In completing the acquisition of Varlen, AMSTED's management ignored both the short and long term impact of the 60% stock price premium paid for Varlen, the combined debt assumed by AMSTED in said acquisition, the cyclical nature of the transportation supply business in which they were dealing and the ensuing repurchase obligations created by an increase in AMSTED share value.

49.    After the acquisition was completed, AMSTED management, perhaps realizing the error of its ways, began generating post-acquisition propaganda to cast the transaction in a positive light and to justify both the inflated stock price paid for Varlen and the $250 million debt assumed by AMSTED, which amounted to a nearly $900 million acquisition price. The ESOP was directly

-17-

affected by these actions as on September 30, 1999, during the ensuing corporate hysteria created by the post-acquisition propaganda, the AMSTED ESOP stock price was appraised at $184.41 per share, a value increase of 32% over the previous year.  This appraisal and announcement again completely ignored the negative aspects of the Varlen merger, and the potential devastating effects of the failure to plan for a massive repurchase obligation.  In the months that followed, AMSTED's repurchase obligation mushroomed as numerous ESOP distribution requests were submitted by employees seeking to retire, to take advantage of this 32% stock price increase, and/or resign from a company whose management's actions had placed their future in a precarious position.

     50.    On information and belief, AMSTED failed to create or implement a repurchase plan or in the alternative failed to create or implement an adequate repurchase plan for the repurchase obligations associated with the ESOP.  On information and belief, LASALLE BANK, in its role as trustee, failed to mandate that AMSTED create or implement a repurchase plan or in the alternative failed to mandate that AMSTED create or implement an adequate repurchase plan for the repurchase obligations associated with the ESOP, nor did it do so independently, for the exclusive benefit of the ESOP, its participants and its beneficiaries.  AMSTED did not have a repurchase plan for the massive distribution requests that ensued from the inflated share price of AMSTED stock following the Varlen merger.  The intentional inflation of the AMSTED share price after the Varlen merger caused the ESOP to pay more than adequate consideration for the shares of AMSTED stock.  Assets of the ESOP were drastically depleted by massive distribution requests stemming from the inflated share price of AMSTED following the merger with Varlen.  As a result of a failure to create or implement a repurchase plan or an adequate repurchase plan, significant plan assets were depleted because of excessive distributions of an artificially inflated share price paid by AMSTED to employees enforcing their repurchase obligations for AMSTED shares.  The Defendants illegally

amended the ESOP to reduce benefits and eligibility for benefits of the Plaintiffs in violation of the

Plan documents, as a result of their failure to create or implement a repurchase plan or an adequate

repurchase plan.

### D. Amendments to the Plan

51.     Under the express terms of Sections 7.1, 7.5 and 7.7 of the ESOP, employees

separating with *either* **30 years** of service (service to or employment with AMSTED, or one of its

operational divisions, as further defined by the ESOP) *or* **after attaining 55 years of age** are entitled

to receive the value of their ESOP Account in a cash lump sum payment.  More specifically, Section

7.5 of the Plan states as follows:

> "7.5 Optional Forms of Distribution.
>
> (a) Subject to the other provisions of this article, any Account in the
> Trust Fund distributable to a Participant which is not distributable in
> the form of an annuity as provided in this Article 7 shall be
> distributed in one or more of the following ways, in accordance with
> applicable laws and regulations:
>
>> (i) **With respect to any Participant whose most recent
>> Severance Date occurs on or after the date he has attained
>> age 55 or 30 Years of Service**, the Account shall be
>> distributed, as the Participant may elect:
>>
>>> (A) by cash payment in one lump sum as soon as
>>> permitted by law,"

(Emphasis added).

52.     Furthermore, under the terms of Section 11.5 of the ESOP, amendment of the Plan

with respect to Participants' interests in their accounts and as to the optional forms of benefit

distribution is expressly restricted.  More specifically, Section 11.5(b) and (d) state as follows:

> "11.5 Limitations on Amendments.  The provisions of this Article are
> subject to the following restrictions:
>
>> ...(b) Except to the extent necessary to conform to the laws

and regulations or the extent permitted by any applicable law or regulation, **no amendment shall operate either directly or indirectly to deprive any Participate of his nonforfeitable beneficial interest in his Account as it is constituted at the time of the amendment.**

...(d) Except as permitted by applicable law, **no amendment shall eliminate or reduce an early retirement benefit or a retirement-type subsidy or eliminate an optional form of benefit.**"

(Emphasis added).

53.     Pursuant to the ESOP, employees separating from employment with AMSTED, or one of its operating divisions, are to submit a form (hereinafter the "distribution form") designating the manner in which they elect the value of their ESOP Account to be distributed at the end of the quarter following their separation date.

## 1. April 2000 Amendments

54.     The Plaintiffs are current participants of the AMSTED ESOP.  As such, they are entitled to the receipt of certain retirement benefits, and are entitled to bring claims on behalf of the ESOP.

55.     On March 2, 2000, AMSTED issued the 1999 Developments Report to AMSTED employees which stated that (i) the AMSTED ESOP consists of 6,600 active and non-active participants, (ii) as of December 31, 1999, $985 million was held in ESOP participant accounts, and (iii) "The $184.41 share price will be used for all ESOP withdrawal requests received by the company on or before June 30, 2000."

56.     On April 18, 2000, AMSTED's Board of Directors met.  During this meeting, Defendants Goetschel and Chiappetta presented information to the Board regarding the massive repurchase obligations of the ESOP and the company's overall financial condition.  During the pendency of the Amendments, but prior to their taking effect, certain AMSTED personnel disclosed

to selected employees that some amendments would be made to the plan, and encouraged those employees to submit withdrawal requests prior to the amendments taking effect. AMSTED personnel failed to disclose the pendency of the Amendments to all participants, thus preventing the Plaintiffs from taking advantage of specific benefits under the plan.

57.     On April 24, 2000, Defendant Goetschel called a joint special meeting of the AMSTED Board of Directors ("Board of Directors" or "Board") and the AMSTED ESOP Committee ("ESOP Committee") to be held on April 25, 2000. The special meeting of the Board and the ESOP Committee was then held on April 25, 2000, in Chicago, Illinois, at the corporate headquarters of AMSTED. In attendance at this meeting were the following defendants: Goetschel, Berg, Collens, Dixon, Jean, Jones, Lohman, Reum, Terry, Whitehurst, Sopranos, Speice, Chiappetta, Hower, and Fischer. Mr. Joseph M. Pawlosky was also in attendance at this meeting in his capacity as legal counsel for the corporation, AMSTED, and the AMSTED ESOP. According to the minutes of this meeting, Goetschel and other directors, officers and advisors of the corporation, AMSTED, including Mr. Pawlosky, then discussed "certain proposals" concerning the AMSTED ESOP. Upon information and belief, there was no independent counsel, nor a representative of the Trustee present representing the interests of the AMSTED ESOP or its participants.

58.     The result of this meeting was that the ESOP Committee and the Board amended the ESOP and more specifically the distribution rules thereunder. The following amendments to the ESOP distribution rules were made on April 25, 2000:

> 1. To delete the qualified joint and survivor annuity, survivor annuity and life annuity forms of distribution as described in Article 7 of the Plan;
>
> 2. To provide for the distribution(s) of less than the full balance of a participant's Account to be made in increments equal to 20% of the participant's account balance and paid as frequently as annually,

-21-

rather than quarterly, as described in Section 7.5 of the Plan,

3.   To provide for the purchase by the Company of Company Securities distributed to participants pursuant to Section 7.14 of the plan and immediately put to the Company pursuant to Section 7.16(d) of the Plan in the following manner (to be consistent with Section 409(h) of the Code):

(a) The amount paid with respect to a "total distribution" (as defined in Section 409(h) of the Code shall be paid in equal annual installments commencing not later than 30 days after exercise of the put and not exceeding four years, with adequate security provided and reasonable interest paid on the unpaid amount; or

(b) The amount paid with respect to an installment distribution shall be paid not later than 30 days after exercise of the put;

4.   To provide for the payment by the Company of all requests for distributions under the ESOP that are received by the Company on or before the Effective Date to be made in accordance with the terms of the Plan and Trust then in effect; and

5.   To amend the Trust to be consistent with the amendments to the ESOP.

These changes to the Plan (the "April 2000 Amendments") were enacted and deemed effective by the Board and the ESOP Committee as of April 26, 2000.

On information and belief, the consent of Defendant LaSalle Bank N.A., the ESOP Trustee, was required to amend the ESOP Trust document to accommodate these and other amendments to the ESOP plan.

59.     The April 2000 Amendments effectively eliminated the cash lump sum optional form of distribution as was expressly established by Section 7.5(a)(i)(A) of the ESOP. The April 2000 Amendments eliminated this optional form of benefit in direct violation of Section 11.5(d) of the ESOP which expressly restricts and disallows amendments which eliminate an optional form of

-22-

benefit under the terms of the Plan.  In lieu of the cash lump sum optional form of benefit, the April

2000 amendments require AMSTED to issue a "lump sum" (as has been described by AMSTED)

benefit in the form of company stock which is then to be immediately "repurchased" by AMSTED.

However, instead of purchasing the stock for cash, AMSTED issues in lieu thereof a promissory note

("note") for the balance of the participant's ESOP Account.  The terms of this note state that it is to

pay a "reasonable" rate of interest[2] and provides for equal payments of 20% of the initial value of the

account to be made beginning 30 days after the distribution request is made with the successive

payments to be made annually thereafter.  Essentially, under the terms of the April Amendments and

the note which evolved therefrom, a Participant receives only 20% of their total account value in

cash 30 days after the distribution request is made.  The remainder of the Participant's account

balance is to then be paid out in the ensuing four years, assuming that AMSTED is economically

viable and able to make such payments at those future dates.  The receipt of company stock in no

way constitutes a cash lump sum benefit.  The receipt of only one-fifth of the Plaintiffs' interest in

their account balance in no way constitutes a cash lump sum benefit.  Nor does the "note" allegedly

securing the value of his account constitute a cash lump sum benefit or anything of actual value, as is

explained more fully herein.  On information and belief, the Trustee, Defendant LaSalle Bank failed

to independently investigate and ensure that a commercially reasonable interest rate was applied to

the notes and that adequate security was given.

     60.     According to AMSTED, the note is allegedly "secured" by the very shares of

company stock which are repurchased by AMSTED via the said note.  Furthermore, this "security"

is the stock of a privately held corporation held as part of an ERISA qualified ESOP retirement and

---

     [2] The actual rate of interest on the note is to be that of the Mid-Term Applicable Federal Rate ("AFR"), as of the
date of issuance of the note and is not subject to change in the future.

benefits plan. There is absolutely no market for this stock and the stock itself has no intrinsic value, thereby resulting in an essentially valueless "security".

61.    The company stock was valued yearly until July 18, 2000, when the Plan was again amended, resulting in a new quarterly evaluation schedule. As such, while the note, at the time of issuance, is allegedly "secured" by shares of AMSTED stock of value equal to the participant's account balance, the value of that stock fluctuates in such a way that the actual value of the stock securing the note could decrease and has decreased.

### 2. July 2000 Amendments

62.    A decrease in value of the stock is, in fact, exactly what subsequently occurred. On July 13, 2000, Defendant Thomas Berg, announced that the next regular meeting of the Board of Directors would be held on July 18, 2000, at AMSTED's corporate headquarters of AMSTED in Chicago, Illinois. Based upon the minutes of the Board of Directors' meeting for this date, it became clear that the Board and the ESOP Committee held a joint meeting on the morning of July 18, 2000, prior to the Board of Directors' meeting, wherein Defendant Goetschel, and other directors, officers and advisors of AMSTED discussed certain proposals regarding the ESOP. Based on the Meeting's minutes, Mr. Joseph M. Pawlosky was again also in attendance at this meeting in his capacity as legal counsel for both the corporation, AMSTED, and the AMSTED ESOP. Upon information and belief no independent counsel, nor any representative of the ESOP Trustee, LaSalle Bank, was present representing the interests of the AMSTED ESOP or its participants.

63.    At the July 18, 2000, Board meeting, the Board and the ESOP Committee voted to amend the ESOP a second time as follows:

> 1.    To provide for a Valuation Date each December 31, March 31, June 30 and September 30, and such other dates as the Committee may from time to time direct,

commencing September 30, 2000;

2.    To provide for the commencement of distributions as follows:

(a) as soon as administratively practical after the participant separates from employment because he (i) either retires at Normal Retirement Age (age 65) or terminates with at least 30 years of service at age 55 or older, whichever is earlier, (ii) dies or (iii) becomes permanently disabled; or

(b) as soon as administratively practical 5 years after the participant otherwise separates; provided that distributions of Company Securities that were acquired with the proceeds of the ESOP acquisition loan shall not commence until the acquisition loan has been fully repaid. (Note: distributions to a participant who terminates with 30 years of service and subsequently attains age 55 will commence as soon as practical after he attains age 55.)

(c) These changes to the commencement of distribution provision shall apply to any participant who either (i) has not terminated employment on or before the Effective Date, or (ii) the Company has not received a completed distribution request form on or before the Effective Date.

The Amendment also reduced AMSTED's contribution to the ESOP Account of each employee from 25% of considered compensation to 10% effective for fiscal year 2000, in effect a retroactive change coming some ten (10) months into the fiscal year. The Board and the ESOP Committee determined that said amendments (the "July 2000 Amendments") were to be made effective as of July 19, 2000.

### E. Administrative Remedies

64.    Following the April 2000 Amendments to the ESOP, Plaintiffs Michael G. Marchant and Charles McQueen filed grievances with Defendant Matthew J. Hower, the Administrator of the

AMSTED ESOP. Following the July 2000 Amendments to the ESOP, Plaintiffs Armstrong, Duckett, Gillespie, Holder, LeCroy, Lightsey, Mason, Jr., Sanders, III, Dwight Smith, John E. Smith, Walker and Wheeler also filed grievances relating to the April 2000 and July 2000 Amendments with Defendant Matthew J. Hower, the Administrator of the AMSTED ESOP. Plaintiffs Marchant and McQueen filed additional grievances relating to the July 2000 Amendments. Plaintiff Zepeda recently filed a grievance, which is currently pending. Throughout the entire grievance and appeal process, Defendant Matthew J. Hower, served as **both** the ESOP Administrator in charge of reviewing Plaintiffs' claims and making determinations thereof, as well as serving as the Treasurer for AMSTED. Accordingly, at all times during the ESOP grievance process of the Plaintiffs, an inherent conflict existed as between Mr. Hower's role as Plan Administrator of the ESOP and as Treasurer of AMSTED as set out in ERISA §3(14)(A), which defines a fiduciary as any person to the extent that they, "[have] discretionary authority or discretionary responsibility in the *administration of the plan.*" (Emphasis added.) Combined with an utter lack of independent management of the ESOP, the very fact that Mr. Hower is the individual who receives, reviews and makes determinations as to the Plaintiffs' ESOP claims is a prima facie showing of his discretionary status as Plan Administrator and therefore, considered in conjunction with his role as a financial officer of AMSTED, supports the basis of the existence of an inherent conflict in his Plan administration and actions. In addition to objecting to the conflict of interest posed by Defendant Hower's dual role as Plan Administrator of the ESOP and as Treasurer of AMSTED, Defendant LaSalle, the ESOP Trustee, failed in numerous ways to act solely and exclusively in the interest of the ESOP and its participants with skill and prudence. The Trustee failed to ensure that liquidity was maintained; that plan assets were preserved, and were used exclusively for the benefit of the Plan and participants. The Trustee breached its fiduciary duty to protect the plan participants and the

-26-

assets of the plan from the self interest of the AMSTED officers and directors; it failed to adequately and independently obtain repurchase studies and share valuations; to ensure that AMSTED met its repurchase obligations; to mandate that plan documents were followed, and adequate information was disclosed to the plan participants. The Trustee made no demand that the Board of Directors meet its fiduciary duties to the ESOP, and failed to resign as Trustee if it found it could exert no influence over the Plan Administrator, the ESOP Committee, the officers, and directors.

65.     Plaintiffs submitted various grievance claims against AMSTED and the ESOP with regard to the various amendments to the plan. These grievances generally sought reinstatement of benefits of Plaintiffs' ESOP account balances. Plaintiff Zepeda was discouraged from filing a grievance with the company by AMSTED personnel. He was told that he had no recourse against AMSTED because he was a non-bargaining unit employee. On information and belief, AMSTED has also improperly interfered with other employees' access to the claims procedure under the AMSTED ESOP.

66.     Defendant Matthew J. Hower, allegedly in his role as Plan Administrator, prepared and forwarded AMSTED's responses to Grievance Claims of the Plaintiffs. AMSTED's responses wholly denied Plaintiffs' Grievance Claims and notified the Plaintiffs of their right to appeal the decision within 60 days. In this cursory response, the Defendant simply dismissed the majority of Plaintiffs' claims. The Defendant also failed to even address several of the claims made by the Plaintiffs, including without limitation, claims made as to the violation of Section 11.5(d) of the ESOP, which expressly states that the Plan cannot be amended to "eliminate an optional form of benefit"; and the inherent conflict which exists as between Mr. Hower's role as both Plan Administrator of the ESOP and as Treasurer of AMSTED.

67.     Plaintiffs appealed the decisions with Defendant Matthew J. Hower, with regard to

-27-

AMSTED's initial denial of the Grievance Claims. Plaintiffs reiterated the claims raised in their initial Grievance Claims and Plaintiffs further addressed the numerous ways in which AMSTED failed to address those claims in its initial responses. Plaintiffs asked to have their ESOP benefits reinstated as was agreed between the parties and pursuant to the terms of the ESOP.

68. Defendant Matthew J. Hower, allegedly in his position as Plan Administrator, acknowledged acceptance of the various Grievance Appeals of the Plaintiffs, and citing Section 11.8(d) of the ESOP, deferred the due date of AMSTED's response to the Grievance Appeal of the Plaintiffs an additional 60 days.

69. Defendant Matthew J. Hower, allegedly in his position as Plan Administrator, prepared and forwarded to the Plaintiffs AMSTED's responses to the various Grievance Appeals of Plaintiffs. AMSTED's Appeal Responses alleged to address the issues raised by the Plaintiffs in their initial Grievance Claims and the subsequent Grievance Appeals. However, as with AMSTED's prior grievance responses, the responses to the various Grievance Appeals failed to address those claims raised under Section 11.5(d) of the ESOP, which expressly states that the Plan cannot be amended to "eliminate an optional form of benefit." AMSTED also again failed to address the issue of the inherent conflict of interest present in the amendment process and in the review of claims under the ESOP. Specifically, Defendant Matthew J. Hower, is both the ESOP Administrator and the Treasurer of AMSTED. The responses concluded with notification to the Plaintiffs of their rights to file suit in this matter as the Administrative Remedies provided under the ESOP had been exhausted and that the Appeal Response was the "final determination" of the various Grievance Claims of the Plaintiffs. Accordingly, although not necessary to bring the claims raised in this Complaint, Plaintiffs properly exhausted all administrative remedies under the terms of the Plan.

70. On or about May 9, 2000, AMSTED and Griffin Wheel decided to cease production

at Griffin Wheel's Bessemer, Alabama, facility. As a result of this decision, all but a handful of the

Bessemer, Alabama, Griffin Wheel employees, including participants in the ESOP, were laid off

effective September 30, 2000. Although the plant officially closed on July 15, 2000, AMSTED

encouraged some employees to remain working at the plant and forgo retirement options. AMSTED

reported this shut-down to its employees as a permanent closing of the plant. However, to federal

and state governmental agencies, AMSTED reported it as merely a "temporary" shut-down. Under

AMSTED's contractual obligations contained in its employment agreement with its salaried

employees, no severance benefits were owed in the event of a "temporary" shut-down. Upon

information and belief the closing of the Griffin Wheel plant was always intended to be a permanent

closure, requiring the payment of contractual severance benefits. Therefore, in addition to bringing

claims on behalf of the ESOP Participants as described below for violations of ERISA, the Alabama

Plaintiffs also bring claims for severance benefits on behalf of the former AMSTED employees at

the Bessemer, Alabama Griffin Wheel plant.

## IV. CLASS ALLEGATIONS

### A. AMSTED ESOP Class

71.     In addition to bringing this action on their own behalf, Plaintiffs also bring this action

as the representatives of the AMSTED ESOP Class, which is defined as all Plan Participants, except

Defendants and those Plan Participants that have retired and whose benefits under the ESOP were

calculated using the share value of 184.41. Hereinafter, Plaintiffs and the AMSTED ESOP Class are

referred to collectively as "Plaintiffs."

72.     **Numerosity**. The members of the AMSTED ESOP Class are so numerous and

geographically dispersed at locations around the country that joinder of all members is

impracticable. On information and belief, Plaintiffs allege that there are thousands of members of

the AMSTED ESOP Class nationally.

     73.    **Commonality**.  Common questions of law and fact exist as to all members of the AMSTED ESOP Class.  These common questions include:

    a.    Whether plan assets were used for purposes other than for the exclusive benefit of the ESOP participants.

    b.    Whether plan fiduciaries breached duties to plan participants by the use of plan assets for their benefit, for the benefit of interested parties, or for the benefit of entities whose interests were adverse to the AMSTED ESOP.

    c.    Whether the ESOP Trustee breached its fiduciary duty to act to the exclusive benefit of the ESOP Plan, its participants and beneficiaries.

    d.    Whether Defendants breached contractual obligations to pay retirement and severance benefits.

    e.    Whether Defendants' were fiduciaries with respect to the ESOP under 29 U.S.C.A. § 1002 (21)(A)

    f.    Whether Defendants were liable as co-fiduciaries for breaches by fiduciaries to the ESOP under 29 U.S.C.A. § 1105(b).

    g.    Whether Defendants had a duty to provide and whether they failed to provide adequate security and pay reasonable interest for stock repurchases.

    h.    Whether the ESOP Trusteee failed to adequately and independently investigate and ensure that adequate security was given for stock repurchases, and that the security given carried a commercially reasonable rate of interest.

    i.    Whether Defendants had a duty to act and whether they failed to act prudently in the management and direction of plan assets under 29 U.S.C.A. § 1004 (a)(I)(B).

Whether the ESOP Trustee failed to monitor and ensure that the plan assets were safeguarded.

j. Whether Defendants had a duty to act and whether they failed to act in accordance with plan documents and ERISA by illegally delegating authority for the management and administration of the plan.

k. Whether the ESOP Trustee failed in its duty to mandate that plan documents were followed.

l. Whether Defendants had a duty to diversify plan assets and whether they failed to diversify plan assets to prevent substantial losses.

m. Whether the ESOP Trustee failed in its duty to ensure adequate diversification of assets.

n. Whether Defendants had a duty to maintain liquidity and whether they failed to maintain liquidity in order to meet repurchase obligations of the Plan.

Whether the ESOP Trustee failed in its duty to mandate the Plan maintain liquidity.

o. Whether Defendants had a duty to disclose and whether they failed to disclose future amendments to the Plan.

p. Whether the ESOP Trustee failed in its duty to ensure adequate disclosure of information to the ESOP participants.

q. Whether Defendants had a duty to obtain and whether they failed to obtain independent evaluations, investigations, and analysis of certain plan transactions.

r. Whether Defendants had a duty to monitor and whether they failed to monitor activities of the corporate ESOP Committee.

s. Whether Defendants paid in excess of adequate consideration for the shares of

Varlen, and subsequently for the shares of AMSTED pursuant to a repurchase obligation.

t. Whether the Defendants had a duty to develop and whether they failed to develop an adequate repurchase plan.

u. Whether the Defendants are personally liable to the ESOP under 29 U.S.C.A. § 1109(a) for breaches of their fiduciary duties.

1  **Typicality**: The named Plaintiffs' claims are typical of the claims of absent members of the AMSTED ESOP Class.

2  **Adequacy of Representation**: The named Plaintiffs will fairly and adequately represent and protect the interests of the AMSTED ESOP Class. Plaintiffs have no interests that are antagonistic to the absent class members. Plaintiffs are represented by experienced and capable counsel that practice extensively in the areas of ERISA, employee benefits litigation, business litigation and class actions.

3  Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by or against individual members of the class would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class, or (ii) adjudications with respect to individual members of the class, which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

4  Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class

as a whole.

5. In the alternative, class certification may be appropriate under Fed. R. Civ. P. 23 (b)(3) because common questions of law and fact referenced in Paragraph 74 predominate over any questions affecting only individual members of the AMSTED ESOP Class. The only individual issue may be each class member's damages, but damages in this case are readily proven on a class-wide basis. In any event, an individual issue as to damages does not preclude certification. There are no material variations in the representations made by the Defendants or their agents or in the effect that Defendants' acts and schemes had on individual class members. Thus, all class members can be uniformly treated. In addition, a class action is superior to other available methods for the fair and efficient adjudication of the controversy at issue herein.

### B. Bessemer Griffin Wheel Subclass

74. In addition to bringing this action on their own behalf, Alabama Plaintiffs also bring this action as the representatives of the Bessemer Griffin Wheel Subclass, which is defined as all full-time and permanent, exempt and non-exempt salaried employees of Amsted as of July 15, 2000, at the Bessemer, Alabama Griffin Wheel plant.

75. **Numerosity**. The members of the subclass are so numerous and that joinder of all members is impracticable. On information and belief, Alabama Plaintiffs allege that there are hundreds of members of the Bessemer Griffin Wheel Subclass.

76. **Commonality**. Common questions of law and fact exist as to all members of the Bessemer Griffin Wheel Subclass. These common questions include:

    1. Whether the Defendants had a contractual obligation to provide severance benefits to the subclass members.

    2. Whether the Defendants breached their contractual obligation to provide

-33-

severance benefits to the subclass members.

3. Whether the Defendants converted severance benefits legally due to the subclass members.

4. Whether the Defendants actions warrant a punitive damage award.

77. **Typicality**: The Alabama Plaintiffs' claims are typical of the claims of absent members of the Bessemer Griffin Wheel Subclass.

78. **Adequacy of Representation**: The Alabama Plaintiffs will fairly and adequately represent and protect the interests of the Bessemer Griffin Wheel Subclass. Alabama Plaintiffs have no interests that are antagonistic to the absent class members, and are represented by experienced and capable counsel that practice extensively in the areas of ERISA, employee benefits litigation, business litigation, contract law and class actions.

79. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by or against individual members of the subclass would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the subclass, which would establish incompatible standards of conduct for the party opposing the subclass, or (ii) adjudications with respect to individual members of the subclass, which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

80. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because the party opposing the subclass has acted or refused to act on grounds generally applicable to the subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the subclass as a whole.

81. In the alternative, class certification may be appropriate under Fed. R. Civ. P. 23

-34-

(b)(3) because common questions of law and fact referenced in Paragraph 82 predominate over any questions affecting only individual members of the Bessemer Griffin Wheel Subclass. The only individual issue may be each subclass member's damages, but damages in this case are readily proven on a class-wide basis. In any event, an individual issue as to damages does not preclude certification. There are no material variations in the representations made by the Defendants or their agents or in the effect that Defendants' acts and schemes had on individual subclass members. Thus, all subclass members can be uniformly treated. In addition, a class action is superior to other available methods for the fair and efficient adjudication of the controversy at issue herein.

## V. CAUSES OF ACTION

### COUNT ONE

### BREACH OF FIDUCIARY DUTY

### (On Behalf of the AMSTED ESOP Class)

82.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 81 above as if fully set forth herein verbatim and anew.

83.     Under ERISA, 29 U.S.C.A. §1002(21)(A) and the principles of federal common law developed thereunder, Defendants are fiduciaries with respect to the AMSTED ESOP in that Defendants (i) exercised discretionary authority or control over the management of the Plan and/or the management or disposition of the Plan assets, (ii) had discretionary authority over and discretionary responsibility in the administration of the Plan, (iii) rendered investment advice for a fee or for compensation as to the Plan assets or had the responsibility or authority to do so, and/or (iv) had the authority or responsibility to have the discretion to appoint a Plan fiduciary.

84.     In the alternative, under ERISA, 29 U.S.C. §1105(b) and the principles of federal common law developed thereunder, Defendants are co-fiduciaries with respect to the AMSTED

ESOP in that Defendants (i) participated knowingly in, or knowingly undertook to conceal, an act or

omission of a fiduciary, knowing such act or omission is a breach; (ii) failed to comply with ERISA

in their administration of specific responsibilities, which said failure gave rise to or enabled a

fiduciary to commit a breach, and/or (iii) had knowledge of a breach by a fiduciary and made no

reasonable effort to remedy said breach.

### A. Breach of Exclusive Benefit Rule

85.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 84 above as if

fully set forth herein verbatim and anew

86.     Under ERISA, 29 U.S.C. §1004(a)(1)(A), Defendants owe Plaintiffs a fiduciary duty

to act (i) solely in the interest of the Plan's participants and beneficiaries, **and** (ii) for the exclusive

purpose of providing benefits to participants, "and their beneficiaries with the care, skill, prudence

and diligence of a prudent person in like circumstances."

87.     Defendants were not able to act freely in the sole and best interest of the Plan's

participants and beneficiaries and for the exclusive purpose of providing benefits to participants due

to the inherent conflicts of interests created by (i) the entanglement of the administration of the

ESOP with the management of AMSTED, (ii) the fact that there was no independent representation

of the ESOP, no independent evaluation of the actions taken by AMSTED, no independent analysis

by the ESOP Trustee or other Defendants of decisions by AMSTED with regard to the ESOP and

ESOP assets, (iii) the fact that inherent conflicts exist as to Plan administration, as the management

of the ESOP and AMSTED are improperly combined in that Plan fiduciaries are also officers and/or

directors of AMSTED and act without proper and adequate independent advice with regard to the

ESOP, and (iv) the fact that the Plan Administrator who reviews and makes determinations as to the

claims of Plan Participants without adequate independent advise and counsel, is also the Treasurer of

AMSTED, thereby creating an inherent conflict as to all Plan grievance and administration procedures.

88.    Defendants breached their fiduciary duty to Plaintiffs by failing to discharge their duties solely in the interest of the Plan's participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries; by failing to use the care, skill, prudence and diligence of a prudent person under the prevailing circumstances; and by failing to act in accordance with the Plan documents and their obligations under ERISA and the controlling federal common law thereunder.

89.    Defendants' failure to act solely in the interest of the Plan participants and beneficiaries constitutes a breach of Defendants' fiduciary duties under ERISA and the federal common law arising from ERISA's preemption of the state law regulation of retirement benefits.

90.    Defendants' conduct in the improper control and management of plan assets and failing to provide to Plaintiffs the retirement benefits to which they are entitled and in denying their claims to such benefits was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs and plan participants.

91.    As a result of Defendants' breaches of fiduciary duty, Plaintiffs have suffered, and are continuing to suffer, serious damage and irreparable injury, including but not limited to the loss and denial of said benefits and financial injury. In addition to the above, the ESOP has been depleted of assets, has been greatly devalued, and it and its participants have sustained losses to their account values. The Plaintiffs have sustained out-of-pocket, compensatory damages as a result of the Defendants' actions. The Defendants' breach of fiduciary duty has also caused the shares of ESOP stock, which is also the security for the repurchase obligations to decline in value by over 50% resulting in further economic damages to the Plaintiffs and the Plan.

## B. Inadequate Security

92.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 91 above as if fully set forth herein verbatim and anew.

93.   Under ERISA, 29 U.S.C. §1001 et seq., IRC §409(h)(5), and the principles of federal common law developed thereunder, Defendants owe Plaintiffs a fiduciary duty to post adequate security and pay reasonable interest in cases where an employer repurchases stock over a five year period.

94.   Defendants breached their fiduciary duty to Plaintiffs by failing to post adequate security or to pay a reasonable interest as to the employer promissory note issued to secure the retirement benefits.  The ESOP Trustee, LaSalle Bank, breached its duty by failing to ensure adequate security was given or a commercially reasonable interest rate was applied.

95.   Defendants' failure to post adequate security or to pay a reasonable interest rate as to the employer promissory note issued to secure retirement benefits constitutes a breach of Defendants' fiduciary duties under ERISA and the federal common law arising from ERISA's preemption of the state law regulation of retirement benefits.

96.   Defendants' conduct in failing to post adequate security, as described in detail above, or to pay a reasonable interest rate as to the employer promissory note issued to secure retirement benefits to was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs or the plan participants.

97.   As a result of Defendants' breach of fiduciary duty, Plaintiffs and plan participants have suffered, and are continuing to suffer, serious damage and irreparable injury, including but not limited to the loss and denial of said benefits and financial injury.

## C. Duty to Act Prudently

-38-

98.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 97 above as if fully set forth herein verbatim and anew.

99.     Under ERISA, 29 U.S.C. §1004(a)(i)(B), Defendants owe Plaintiffs a fiduciary duty to act for the exclusive purpose of providing benefits to participants, "and their beneficiaries with the care, skill, prudence and diligence of a prudent person in like circumstances."

100.    Defendants breached their fiduciary duty to Plaintiffs by failing to use the care, skill, prudence and diligence of a prudent person under the prevailing circumstances, both substantively and procedurally, as obligated under ERISA and the controlling federal common law thereunder.

101.    Defendants' conduct in failing to use the care, skill, prudence and diligence of a prudent person under the prevailing circumstances, both substantively and procedurally, resulting in a depletion of plan assets, paying more than adequate consideration for property, engaging in conduct that was not in the best interests of the plan or its participants and, in the attempt to avoid providing to Plaintiffs the retirement benefits to which they are entitled was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs.

102.    As a result of Defendants' breaches of fiduciary duty, Plaintiffs have suffered, and are continuing to suffer, serious damage and irreparable injury, including but not limited to the loss and denial of said benefits and financial. In addition to the above, the ESOP has been depleted of assets, has been greatly devalued, and it and its participants have sustained losses, and the Plaintiffs have sustained out-of-pocket, compensatory damages as a result of the Defendants' actions. The Defendants' breach of fiduciary duty has also caused the shares of ESOP stock, which is also the security for the repurchase obligations to decline in value by over 50% resulting in further economic damages to the Plaintiffs and the Plan.

### D. Duty to Act in Accordance With Plan Documents and ERISA Law

103.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 102 above as if fully set forth herein verbatim and anew.

104.    Under ERISA, 29 U.S.C. §1104(a)(1)(D), Defendants owe Plaintiffs a fiduciary duty to act in compliance with the terms of the ESOP documents and their obligations under ERISA and the controlling federal common law thereunder.

105.    Defendants breached their fiduciary duty to Plaintiffs by failing to act in accordance with the terms of the ESOP documents and their obligations under ERISA and the controlling federal common law thereunder.

106.    Defendants' failure to act in accordance with the terms of the ESOP documents and their obligations under ERISA and the controlling federal common law thereunder constitutes a breach of Defendants' fiduciary duties under ERISA and the federal common law arising from ERISA's preemption of the state law regulation of retirement benefits.

107.    Defendants' conduct in failing to act in accordance with the terms of the ESOP documents and their obligations under ERISA and the controlling federal common law thereunder was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs.

108.    As a result of Defendants' breach of fiduciary duty, Plaintiffs have suffered, and are continuing to suffer, serious damage and irreparable injury, including but not limited to the loss and denial of said benefits and financial injury. In addition to the above, the ESOP has been depleted of assets, has been greatly devalued, and it and its participants have sustained losses, and the Plaintiffs have sustained out-of-pocket, compensatory damages as a result of the Defendants' actions. The Defendants' breach of fiduciary duty has also caused the shares of ESOP stock, which is also the security for the repurchase obligations to decline in value by over 50% resulting in further economic

-40-

damages to the Plaintiffs and the Plan.

### E. Duty to Diversify

109. Plaintiffs reallege and incorporate by reference paragraphs 1 through 108 above as if fully set forth herein verbatim and anew.

110. Under ERISA, 29 U.S.C. §1004(a)(1)(C), Defendants owe Plaintiffs and the ESOP a fiduciary duty to sufficiently diversify plan investments and assets in order to minimize risks of losses to the ESOP, and to Plan participants and beneficiaries.

111. Defendants breached their fiduciary duty to Plaintiffs and to the ESOP by (i) failing to continuously and adequately analyze the financial condition of AMSTED and other related factors thereof, and (ii) failing to sufficiently diversify plan investments and assets, resulting in losses to the ESOP and to Plan participants and beneficiaries, including Plaintiffs.

112. Defendants' failure to sufficiently diversify plan investments and assets, resulting in losses to the ESOP and to Plan participants and beneficiaries constitutes a breach of Defendants' fiduciary duties under ERISA and the federal common law arising from ERISA's preemption of the state law regulation of retirement benefits.

113. Defendants' conduct in failing to sufficiently diversify plan investments and assets, resulting in losses to the ESOP and to Plan participants and beneficiaries was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs.

114. As a result of Defendants' breaches of fiduciary duty, Plaintiffs have suffered, and are continuing to suffer, serious damage and irreparable injury, including but not limited to the loss and denial of said benefits and financial injury. In addition to the above, the ESOP has been depleted of assets, has been greatly devalued, and it and its participants have sustained losses, and the Plaintiffs have sustained out-of-pocket, compensatory damages as a result of the Defendants' actions. The

Defendants' breach of fiduciary duty has also caused the shares of ESOP stock, which is also the security for the repurchase obligations to decline in value by over 50% resulting in further economic damages to the Plaintiffs and the Plan.

### F. Duty to Maintain Liquidity

115.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 114 above as if fully set forth herein verbatim and anew.

116.    Under ERISA, 29 U.S.C. §1004(a), the Internal Revenue Code, and the principles of federal common law developed thereunder, Defendants owe Plaintiffs and the ESOP a fiduciary duty to maintain liquidity in order to permit distributions to be made in accordance with the terms of the Plan.

117.    Defendants breached their fiduciary duty to Plaintiffs and to the ESOP by (i) failing to maintain liquidity in order to permit distributions to be made in accordance with the terms of the Plan, and (ii) placing the ESOP in such a precarious economic position as to require the liquidation and sale of non-liquid assets at possibly less than fair-market value in order to satisfy its repurchase obligations.

118.    Defendants' failure to maintain liquidity in order to permit distributions to be made in accordance with the Plan constitutes a breach of Defendants' fiduciary duties under ERISA and the federal common law arising from ERISA's preemption of the state law regulation of retirement benefits.

119.    Defendants' conduct in failing to maintain liquidity in order to permit distributions to be made in accordance with the Plan was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs.

120.    As a result of Defendants' breaches of fiduciary duty, Plaintiffs have suffered, and are

continuing to suffer, serious damage and irreparable injury, including but not limited to the loss and denial of said benefits and financial injury. In addition to the above, the ESOP has been depleted of assets, has been greatly devalued, it and its participants have sustained losses, and the Plaintiffs have sustained out-of-pocket, compensatory damages as a result of the Defendants' actions. The Defendants' breach of fiduciary duty has also caused the shares of ESOP stock, which is also the security for the repurchase obligations to decline in value by over 50% resulting in further economic damages to the Plaintiffs and the Plan.

### G. Duty Not to Mislead Participants and Duty to Disclose

121.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 120 above as if fully set forth herein verbatim and anew.

122.    Under ERISA, 29 U.S.C. §1001 et seq., and the principles of federal common law developed thereunder, the Defendants owe Plaintiffs a fiduciary duty to disclose and not to mislead them and an affirmative duty to disclose to Plaintiffs information regarding decisions regarding amendments to the plan, reductions in eligibility, the effects of their elections and actions regarding an optional form of payout under the ESOP. The Defendants also owed a duty to refrain from selectively disclosing forthcoming amendments to the ESOP to certain employees, to the detriment of other employees.

123.    Defendants breached their fiduciary duty to Plaintiffs by (i) misleading them as to the effects of their actions in regards to their continued employment versus payout options under the ESOP, (ii) disclosing future plan amendments to selected employees and not all employees, affording those selected employees an opportunity to take advantage of plan benefits and assets to the detriment of other plan participants, and (iii) failing to disclose to Plaintiff critical information regarding the effects of their elections and actions regarding an optional form of payout under the

ESOP. The ESOP Trustee, LaSalle Bank, breached its duty by failing to mandate adequate disclosure of information.

124.    Defendants' failure to disclose to Plaintiffs critical information and their willful disclosure of future amendments to selected employees constitutes a breach of Defendants' fiduciary duties under ERISA and the federal common law arising from ERISA's preemption of the state law regulation of retirement benefits.

125.    Defendants' conduct in misleading Plaintiffs, in disclosing to selected employees future amendments to the ESOP to the detriment of other employees, and by failing to disclose to Plaintiff critical information was willful, wanton, malicious and with complete indifference to the rights or interests of the Plaintiffs.

126.    As a result of Defendants' breach of fiduciary duty, Plaintiffs have suffered, and are continuing to suffer, serious damage and irreparable injury, including but not limited to the loss and denial of said benefits and financial injury.   In addition to the above, Plaintiffs have sustained out-of-pocket, compensatory damages as a result of the Defendants' actions.

## H. Failure to Act Solely in the Interest of the Pension Plan Participants

127.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 126 above as if fully set forth herein verbatim and anew.

128.    Under ERISA, 29 U.S.C.A.§ 1104(a)(1) fiduciaries are required to act solely in the interests of the pension plan participants.

129.    Defendants breached their fiduciary duty to the plan and its participants in connection with certain transactions related to the Varlen merger and by failing to create or implement an adequate repurchase plan for AMSTED's repurchase obligation of employee shares.  Defendants breached their fiduciary duty by taking actions that were not solely motivated by the interests of the

-44-

plan participants.

130.    Defendants breached their fiduciary duty to the plan by failing to act with the care, skill, prudence, and diligence under circumstances that a prudent person acting in a like capacity familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

131.    Defendants failure to act solely for the benefit of the plan and plan participants was willful, wanton, malicious and with complete indifference to the rights and interests of the plan and the plan participants.

As a result of the Defendants' breach of fiduciary duty, the plan and the plan participants have suffered, and continue to suffer serious monetary damage and irreparable injury, including but not limited to asset devaluation, pecuniary loss, and loss of opportunity.

I. Failure to Investigate or Conduct an Adequate Independent Analysis of Transactions.

132.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 131 above as if fully set forth herein verbatim and anew.

133.    Under ERISA, 29 U.S.C.A. § 1104 (a)(1), fiduciaries are required to take actions with regard to the plan as a prudent person would under the particular circumstances.  The fiduciary duty of prudence and loyalty required that the Defendants obtain adequate independent advice and analysis of the Varlen merger, as it related to the plan and plan participants.  The fiduciary duty of prudence and loyalty required that the Defendants create and implement an adequate repurchase plan for AMSTED's repurchase obligations for employee shares.

134.    Defendants breached their fiduciary duties when they failed to acquire independent evaluations, appraisals or other investigations or in the alternative failed to acquire adequate independent evaluations, appraisals or other investigations of the Varlen merger, specifically

-45-

including but not limited to the tender offer, the actual use or the exercise of dominion and control

of plan assets in connection with the Varlen merger, the financing terms and arrangements, and the

debt assumption. In addition, the Defendants breached their fiduciary duties when they failed to

create and implement an adequate repurchase plan for AMSTED's repurchase obligations for

employee shares precipitated by the inflation of the share price of AMSTED shares after the Varlen

merger.

135.    Defendants' acted in the interest of themselves and the corporation, not in the

interests of the plan and the plan participants, and were motivated by interests that were both

financial and nonfinancial.

136.    Defendants failure to acquire an adequate independent analysis of the Varlen merger

and their failure to create or implement an adequate repurchase plan for employee shares was willful,

wanton, malicious and was accomplished with complete indifference to the rights and interests of the

plan and the plan participants.

137.    As a result of the Defendants' breaches of fiduciary duty, the plan and the plan

participants have suffered, and continue to suffer serious monetary damage and irreparable injury,

including but not limited to asset devaluation, pecuniary loss, and loss of opportunity.

**J. Using Assets of the Pension Plan for the Benefit of a Party in Interest, the Corporations and
its Directors, or Parties Whose Interests Are Adverse to Those of the Plan.**

138.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 137 above as if

fully set forth herein verbatim and anew.

139.    Under ERISA, 29 U.S.C.A.§ 1106(a)(1)(D) fiduciaries are prohibited from using or

controlling plan assets for the benefit of a party in interest. ERISA also prohibits the use or control

of plan assets for the benefit of their own interests under 29 U.S.C.A.§ 1106(b)(1) whether they be

financial or nonfinancial interests. In addition, section 29 U.S.C.A.§ 1106(b)(2) of ERISA prohibits the use or control of plan assets for the benefit of parties whose interests are adverse to those of the plan or its participants.

140.    Defendants are parties in interest as defined under ERISA 29 U.S.C.A.§ 1002(14) with respect to the plan and the plan trust. Defendants interests were adverse to the interests of the plan for purposes of the Varlen merger and the repurchase of employee shares subsequent to the Varlen merger.

141.    Defendants breached their fiduciary duties in that they used or controlled plan assets for the benefit of interested parties, themselves, parties whose interests were adverse to the plan, and the corporation in order to accomplish the Varlen merger and in connection with the purchase of AMSTED employee shares pursuant to AMSTED's repurchase obligation.

142.    Defendants engaged in prohibited transactions under 29 U.S.C.A.§ 1106 in making a tender offer for the stock of Varlen, purchasing shares in Varlen, assuming debt of Varlen, incurring additional debt for the corporation, and eventually acquiring Varlen, in that these various transaction involved plan assets that the Defendants used for the benefit of interested parties, themselves, parties whose interests were adverse to the plan and/or the corporation. Defendants also engaged in prohibited transactions under 29 U.S.C.A.§1106 in purchasing employee AMSTED shares for more than adequate consideration and without a repurchase plan for the massive demand for repurchase of employee shares after the Varlen merger in that these various transactions involved plan assets that the Defendants used for the benefit of interested parties, themselves, parties whose interests were adverse to the plan and/or the corporation.

143.    Defendants use of plan assets for their own interests and for the interests of the corporation, and not for the exclusive benefit of the plan and the plan participants was willful,

-47-

wanton, malicious and was accomplished with complete indifference to the rights and interests of the plan and the plan participants.

144. As a result of the Defendants' breaches of fiduciary duty, the plan and the plan participants have suffered, and continue to suffer serious monetary damage and irreparable injury, including but not limited to asset devaluation, pecuniary loss, and loss of opportunity.

### K. Co-fiduciary Liability from Failure to Investigate and Monitor Activities of the Corporate ESOP Committee.

145. Plaintiffs reallege and incorporate by reference paragraphs 1 through 144 above as if fully set forth herein verbatim and anew.

146. Under ERISA, 29 U.S.C.A.§ 1105(a)(2) co-fiduciaries are held liable for the actions of fiduciaries when they knew or should have known of a breach of the fiduciary duties owed to the plan or its participants.

147. Defendants are liable as co-fiduciaries where the ESOP Trustee, the corporation and its directors failed to monitor or failed to adequately monitor the performance of the corporate committee responsible for managing the ESOP.

148. Defendants are liable as co-fiduciaries where the ESOP Trustee, the company and its directors failed to investigate or failed to adequately investigate the actions of the corporate committee responsible for managing the ESOP.

149. Defendants are liable as co-fiduciaries where the ESOP Trustee, the corporation and its directors knew or should have known that the committee responsible for managing the ESOP had committed fiduciary breaches.

150. As a result of the Defendants' breach of fiduciary duty, the plan and the plan participants have suffered, and continue to suffer serious monetary damage and irreparable injury,

including but not limited to asset devaluation, pecuniary loss, and loss of opportunity.

**L. Failure of Fiduciaries to Protest, Inhibit or Prevent Misuse of Plan Assets**

151.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 150 above as if fully set forth herein verbatim and anew.

152.    Under ERISA, 29 U.S.C.A.§ 1104(a)(1)(D) fiduciaries are required to act in accordance with documents and instruments governing pension plans, making fiduciaries liable for plan administrator breaches under 29 U.S.C.A.§ 1105(a)(2). The plan specifies the manner in which the ESOP is to be administered, and the fiduciaries to the plan must follow the plan documents.

153.    Defendants failed to take any steps to protest, inhibit, or prevent the misuse by the plan administrator and others of assets of the plan. This failure resulted in an informal delegation of authority, which constituted an illegal delegation of authority to the corporation and its directors according to the plan documents and resulted in a breach of fiduciary duty for which the corporation, the ESOP trustee, and directors are liable as co-fiduciaries under 29 U.S.C.A.§ 1105(a)(2).

154.    Defendants failure to take steps to protest, inhibit, or prevent the misuse by the plan administrator and others of assets of the plan, was willful, wanton, malicious and was accomplished with complete indifference to the rights and interests of the plan and the plan participants.

155.    As a result of the Defendants' breaches of fiduciary duty, the plan and the plan participants have suffered, and continue to suffer serious monetary damage and irreparable injury, including but not limited to asset devaluation, pecuniary loss, and loss of opportunity.

**M. Use of Plan Assets for the Varlen Merger and the Repurchase of Employee AMSTED Shares for More That Adequate Consideration**

156.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 155 above as if fully set forth herein verbatim and anew.

157.    Under ERISA, 29 U.S.C.A.§ 1106 fiduciaries are prohibited from purchasing securities and other goods or property for more than adequate consideration as defined in 29 U.S.C.A.§ 1002 (18) as the "fair market value of the asset as determined in good faith by the trustee or the named fiduciary pursuant to the terms of the plan." Fiduciaries breach their duties if they pay more than fair market value for stock or property if plan assets are affected.

158.    Defendants breached their fiduciary duties under 29 U.S.C.A.§ 1106 by paying more than adequate consideration for stock and transactions including but not limited to the repurchase of employee shares of AMSTED, tender offers for the stock of Varlen, purchasing shares in Varlen, assuming debt of Varlen, incurring additional debt for the corporation, and eventually acquiring Varlen, in that these various transactions involved plan assets with which the Defendants paid more than adequate consideration.

159.    Defendants, with the knowledge and complicity of the ESOP Trustee, engaged in prohibited transactions under 29 U.S.C.A.§ 1106 in repurchasing employee AMSTED shares, making a tender offer for the stock of Varlen, purchasing shares in Varlen, assuming debt of Varlen, incurring additional debt for the corporation, and eventually acquiring Varlen, in that these various transactions involved plan assets that the Defendants used for the benefit of interested parties, themselves, parties whose interests were adverse to the plan and/or the corporation.

160.    Defendants payment of something other than adequate consideration for stocks and other property use of plan assets for their own interests and for the interests of the corporation, and not for the exclusive benefit of the plan and the plan participants was willful, wanton, malicious and was accomplished with complete indifference to the rights and interests of the plan and the plan participants.

161.    As a result of the Defendants' breaches of fiduciary duty, the plan and the plan

participants have suffered, and continue to suffer serious monetary damage and irreparable injury, including but not limited to asset devaluation, pecuniary loss, and loss of opportunity.

### N.  Personal Liability for Breach of Fiduciary Duties

162.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 161 above as if fully set forth herein verbatim and anew.

163.   Pursuant to 29 U.S.C.A. § 1109(a), fiduciaries who breach any of the responsibilities, obligations, or duties imposed by ERISA shall be personally liable to the plan and its participants.

164.   Because Defendants have breached their fiduciary duties to the plan and its participants as detailed above in this Count I, Defendants are personally liable to the plan and its participants.

165.   As a result of the Defendants' breach of fiduciary duty, the plan and the plan participants have suffered, and continue to suffer serious monetary damage and irreparable injury, including but not limited to asset devaluation, pecuniary loss, and loss of opportunity.

### COUNT TWO

### WRONGFUL DENIAL OF CLAIMS AND BENEFITS

### (On Behalf of the AMSTED ESOP Class)

166.   Plaintiffs reallege and incorporate by reference the foregoing paragraphs 1 through 165 as if fully set forth herein verbatim and anew.

167.   Under ERISA, 29 U.S.C. §1132, Plaintiffs, as plan participants, are given the express right to "recover benefits due to [them] under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." Defendants have wrongfully denied both the Plaintiffs' benefits and claims to those benefits. The Defendants' denial of Plaintiffs' claims as to his retirement benefits under the terms of the Plan is

arbitrary and capricious and an abuse of discretion.

168.   Defendants' interpretation of the Plan and denial of Plaintiffs' claims for benefits is not consistent with the stated goals of the Plan or of the Amendment thereto.

169.   Defendants' interpretation of the Plan and denial of Plaintiffs' claims for benefits renders language of the Plan either meaningless or created internal inconsistencies within the Plan itself.

170.   Defendants' interpretation of the Plan and denial of Plaintiffs' claims for benefits conflicts with the substantive and/or procedural requirements of the ERISA statute and federal common law developed thereunder.

171.   Defendants' interpretation of the Plan and denial of Plaintiffs' claims for benefits is contrary to the clear language of the Plan.

172.   At all times during the administrative ESOP grievance process of the Plaintiffs, an inherent conflict existed as between Defendant Matthew J. Hower's roles as both the Plan Administrator of the ESOP and as Treasurer of AMSTED.  As a result of improper entanglements of corporate and ESOP management, Mr. Hower's discretionary status as Plan Administrator is in direct conflict with his role as Treasurer of AMSTED, the employer company, and therefore supports the basis of the existence of an inherent conflict in all Plan administration and actions with regards to the Plaintiff's claims for benefits under the Plan.

173.   Defendants' wrongful denial of both the Plaintiffs' benefits and claims to which Plaintiffs were or would be entitled is in violation of the provisions of ERISA and the federal common law arising from ERISA's preemption of the state law regulation of retirement benefits.

174.   As a result of Defendants' wrongful denial of both the Plaintiffs' benefits and claims to those benefits, Plaintiffs have suffered, and are continuing to suffer, serious damage and

irreparable injury, including but not limited to the loss and denial of said benefits and financial injury. In addition to the above, Plaintiffs have sustained out-of-pocket, compensatory damages as a result of the Defendants' actions.

## COUNT THREE

## UNLAWFUL PLAN AMENDMENTS

### (On Behalf of the AMSTED ESOP Class)

175. Plaintiffs reallege and incorporate by reference the foregoing paragraphs 1 through 174 as if set forth herein verbatim anew.

176. ERISA §204(g) (29 U.S.C. §1054(g)) makes it unlawful to decrease a plan participant's benefit by a plan amendment; and for the purposes of the statutory provision, elimination of an optional form of benefit such as the optional lump sum distribution of ESOP benefits prior to April 25, 2000, is deemed by the statute "as reducing accrued benefits." The requirements of the statute are also set forth in §11.5(d) of the plan.

177. Notwithstanding the foregoing, and despite the explicit terms of the ESOP, AMSTED purported to amend its plan to eliminate or restrict certain benefits. LaSalle Bank, N.A. was complicit in these amendments by failing to insist AMSTED adhere to Plan documents, failing to conduct an independent review and investigation, and failing to act solely for the Plan participants. Plaintiffs' right to receive the full value of their ESOP benefits has been diminished by the fact that eligibility requirements were altered, accrued benefits were cut back, and no security for the payment of benefits is given other than in the shares of company stock which have significantly declined in value.

178. As a result of Defendants' actions in violation of both the statute and the governing plan document, the purported amendments to the plan is null and void and of no effect whatsoever.

## COUNT FOUR

## BREACH OF CONTRACT

### (On Behalf of Bessemer Griffin Wheel Subclass)

179.    Alabama Plaintiffs reallege and incorporate by reference paragraphs 1 through 178 as if fully set forth herein verbatim and anew.

180.    Under ERISA, 29 U.S.C.A. §1132, and the principles of federal common law developed thereunder, in addition to the principles of Alabama contract law, the Defendants are obligated to fulfill their contractual promises with respect to retirement benefits and severance pay. Pursuant to Alabama contract law, the Defendants were obligated to fulfill their contractual promises with respect to severance payments to the Alabama Plaintiffs and the Bessemer Griffin Wheel Subclass (hereinafter collectively referred to as "Alabama Plaintiffs").

181.    Defendants' promises of retirement benefits and severance payments upon retirement or termination in return for many years of service were integral parts of Defendants' employment relationship and contracts with the Alabama Plaintiffs. By rendering full performance, namely many years of faithful service to the Defendants, Alabama Plaintiffs fully and completely satisfied their obligations.

182.    Through their control over and domination of the management, operations, property, and financial and decision-making affairs of AMSTED, Defendants were the employers of Alabama Plaintiffs under ERISA and federal common law, in addition to Alabama contract law and remain liable to the Alabama Plaintiffs for those retirement and severance benefits as promised by the Defendants.

183.    By failing and refusing to provide the promised severance payments to which Alabama Plaintiffs are entitled, Defendants are in breach of their contracts with Alabama Plaintiffs,

and are in violation of Alabama contract law. By failing and refusing to provide the promised

retirement benefits to which Alabama Plaintiffs are entitled, Defendants are in breach of their

contracts with Alabama Plaintiffs, and are in violation of the provisions of ERISA and the federal

common law arising from ERISA's preemption of state law regulation of retirement benefits.

184.    As a result of Defendants' breach of contract, Alabama Plaintiffs have suffered, and are

continuing to suffer, serious damage and irreparable injury, including but not limited to the loss

of the use of their severance pay and the loss and denial of retirement benefits and financial

injury. In addition to the above, Alabama Plaintiffs have sustained out-of-pocket, compensatory

damages as a result of the Defendants actions.

**COUNT FIVE**

**CONVERSION**

**(On Behalf of Bessemer Griffin Wheel Subclass)**

185.    Alabama Plaintiffs reallege and incorporate by reference paragraphs 1 through

184 above as if fully set forth herein verbatim anew.

186.    Defendants participated in a wrongful taking of Alabama Plaintiffs' severance

benefits and illegally asserted ownership over them. In addition the Defendants misused Alabama

Plaintiffs' severance pay by wrongfully detaining or interfering with the Alabama Plaintiffs' rights to

their severance pay. As a result, Alabama Plaintiffs have suffered, and are continuing to suffer

serious damage and irreparable injury, including but not limited to loss of benefits and financial

injury. In addition, the nature of Defendants conduct was malicious, intentional, willful and wanton.

The Alabama Plaintiffs' allege that the Defendants conduct was of such a nature that the Defendants

should be punished to deter such actions in the future.

**V. <u>PRAYER FOR RELIEF</u>**

-55-

WHEREFORE, Plaintiffs pray for relief as follows:

A.   The Court declare, adjudge and decree (i) that Plaintiffs are entitled to their retirement benefits as existed prior to the Amendments and as expressly set forth and provided in the ESOP and employment contract between Plaintiffs and Defendants, and (ii) that Defendants are in breach of their contract with Plaintiffs.

B.   The Court declare, adjudge and decree that Defendants breached their fiduciary duties to Plaintiff and to the ESOP as a whole in violation of ERISA, 29 U.S.C.A. §1104; §1105; and §1106. The Court void any prohibited transactions under 29 U.S.C.A.§1106, and return improperly expended assets to the Plan.

C.   The Court declare, adjudge and decree that Defendants are personally liable for breaching their fiduciary duties as detailed under the ERISA law pursuant to 29 U.S.C.A. § 1109(a).

D.   The Court declare, adjudge and decree that Defendants' conduct was willful, wanton, malicious and with complete indifference to the rights and interests of Plaintiff and the ESOP as a whole.

E.   The Court declare, adjudge and decree that Defendants failed to act solely in the interest of the Plaintiffs and of the ESOP as a whole and failed to act with skill and prudence in their roles as fiduciaries.

F.   The Court issue preliminary and permanent injunctive relief requiring Defendants to resume and reinstate the retirement benefits as promised under the express terms of the ESOP to which Plaintiffs are entitled and upon which Plaintiffs reasonably relied.

G.   The Court issue preliminary and permanent injunctive relief prohibiting Defendants from further reducing, eliminating or terminating the promised retirement benefits to which Plaintiffs are entitled.

H.   The Court decree such other injunctive relief including but not limited to voiding prohibited transactions, and/or enter such other orders as are necessary to dissipate or relieve the effects of the aforesaid violations and wrongs, and illegal acts and conduct of Defendants.

I.   The Court award to Plaintiffs compensatory damages suffered as a result of the wrongs complained of herein including any costs incurred by Plaintiffs as a result of the termination, elimination and alteration of their retirement benefits.

J.   The Court award to Plaintiffs punitive and/or extracontractual damages as provided by law.

K.    The Court award to Alabama Plaintiffs severance pay and benefits as requested herein.

L.    The Court award Plaintiffs the costs of suit, including reasonable attorneys' fees, as provided by law.

M.    The Court award Plaintiffs and the ESOP as a whole such other and further relief as the Court may deem just and equitable.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

One of the Attorneys for the Non-Retiree Plaintiffs

**NON-RETIREE PLAINTIFFS' COUNSEL:**

Susan E. Kennedy, Esq.
R. Jason Thomas, Esq.
SLATE KENNEDY LLC
166 Commerce Street, Suite 350
Montgomery, Alabama 36103
Telephone: (334) 262-3300
Facsimile: (334) 262-3301

Gary D. McCallister, Esq.
Thomas A. Kelliher, Esq.
GARY D. MCCALLISTER & ASSOCIATES
29 South LaSalle Street, Suite 1210
Chicago, Illinois 60603
Telephone: (312) 345-0611
Facsimile: (312) 345-0612

Daniel "Dee" Miles, Esq.
Clinton C. Carter, Esq.
BEASLEY, ALLEN, CROW, METHVIN,
    PORTIS & MILES, P.C.
P. O. Box 4160
Montgomery, Alabama 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

Robert M. Foote, Esq.
Peter J. Flowers, Esq.
FOOTE, MEYERS, MIELKE & FLOWERS, LLC
13 S. 7th Street
Geneva, Illinois 60134
Telephone: (630) 232-6333
Facsimile: (630) 845-8982

Pamela B. Slate, Esq.
Nicola A. Thompson, Esq.
SLATE KENNEDY LLC
2001 Park Place North, Suite 450
Birmingham, Alabama 35203
Telephone: (205) 328-7700
Facsimile: (205) 328-7701

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon the following by placing a copy of the same in the United States Mail, Certified Mail Return Receipt Requested, postage prepaid and properly paid on this the 9th day of September, 2002.

The Honorable Elaine L. Chao
U. S. Secretary of Labor
200 Constitution Avenue NW
Washington, D.C. 20210

The Honorable Paul H. O'Neill
U. S. Secretary of the Treasury
1500 Pennsylvania Avenue SW
Room 3000
Washington, D.C. 20220

Richard H. Schnadig, Esq.
Charis Runnels, Esq.
Attorneys for Defendants
VEDDER, PRICE, KAUFMAN & KAMMHOLZ
222 North LaSalle Street
Suite 2600
Chicago, IL 60601-1003

Mark D. DeBofsky, Esq.
Nathan Q. Rugg, Esq.
Attorneys for Retiree Plaintiffs
DeBOFSKY & DeBOFSKY
77 West Washington Street, Suite 500
Chicago, IL 60602

Ed Gentle, Esq.
Temple D. Trueblood, Esq.
Attorneys for Retiree Plaintiffs
GENTLE, PICKENS, ELIASON & TURNER
Two North 20th Street, Suite 1200
Birmingham, AL 35203

OF COUNSEL